[No. 20233.  *En Banc.*  March 29, 1927.]

*In the Matter of the Application of* FRED RATH *for a Writ of Habeas Corpus.*[1]

[1] INSANE PERSONS (5)—RESTORATION TO SANITY—EVIDENCE. Where the evidence is conflicting, and the keeper deems it inadvisable to release him, findings of insanity, in habeas corpus proceedings to release an inmate of a public institution, will not be disturbed, unless the evidence presents a clear case to the contrary.

Appeal from an order of the superior court for Pierce county, Card, J., denying the application of petitioner for a discharge from the custody of the state hospital for insane persons.  Affirmed.

*Wm. H. Pratt,* for appellant.

*Thos. P. Revelle, Bertil E. Johnson,* and *Lester E. Pope,* for respondent.

PER CURIAM:—Some time in the early part of the year 1926, the appellant, Rath, was adjudged to be insane and was committed to the Western Washington Hospital for the Insane.  The appellant had served in the World War, and shortly after his commitment was transferred to the care and custody of the Veterans Bureau of the United States, and confined in a separate ward of the hospital mentioned devoted exclusively to the care and custody of ex-service men.  Later on, the appellant instituted a proceeding in habeas corpus against the superintendent of the hospital seeking his discharge from custody, averring in his petition that he was neither physically disabled nor mentally deranged, and was entitled to a discharge.  A hearing was had on the petition in the superior court of Pierce county, at the conclusion of

[1] Reported in 254 Pac. 466.

which the court denied the prayer of his petition. The present appeal is from the order of the superior court.

The legal questions, whether the officer against whom the writ was directed was the lawful custodian of the petitioner, and whether the courts of the state have jurisdiction to entertain the proceeding, we shall not discuss, as we think that the judgment of the trial court was right on the question of fact involved.

[1] The question of fact is, of course, whether the appellant has now a mental disorder which renders him unfit or unsafe to be at large. On this question, the expert witnesses disagree. Those on the part of the appellant testify that he presents a case of undeveloped mentality rather than a case of mental disorder; that, while he is an adult in years and in physique, he has the mental development of a boy between the ages of twelve and fourteen years; and that he is as safe to be at large as is any other person of that degree of mentality. On the other side, it is testified that he has a mental disorder in addition to his lack of mental development, which causes his mind to give way in times of stress, rendering him insane for the time being. Such was the testimony of the superintendent of the institution in which the appellant is confined, who has had the opportunity to observe his conduct during the entire period of his confinement. The testimony of the lay witnesses does not weigh heavily for either side, yet, as we read it, particularly the testimony of the appellant himself, it leads to the conclusion that a longer confinement would be to his benefit.

It must be remembered that the hospital in which the appellant is confined is a state institution, under the direction and control of an officer appointed by the chief executive of the state, and that neither he, nor the corps of physicians he employs, has any interest

or desire. to keep a person confined therein longer than will be to his benefit or the benefit of the state. While the courts will not hesitate to order the discharge of a person confined in the institution, when it clearly appears that he is unlawfully confined therein, they assume a somewhat grave responsibility when they order a person discharged whom the keeper of the institution deems unsafe to be at large.

In our opinion, the evidence in the present record does not present that clear case which authorizes the courts to interfere. The judgment of the trial court will therefore stand affirmed.